**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                           **Case No. 6:16-CR-11-ORL-40GJK**

**RYAN ANTHONY ADAMS,**

    **Defendant.**

_____/

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant Ryan A. Adams, by and through his undersigned attorney, moves this Honorable Court, pursuant to Fed. R. Crim. P. 12(b)(3)(c), to suppress all evidence obtained from the Government's illegal search of his computer through the deployment of a "Network Investigative Technique" (NIT), in violation of Fed. R. Crim. P. 41 and 28 U.S.C. § 636(a). This includes all evidence seized from Mr. Adams on September 11, 2015, and September 12, 2015.

**STATEMENT OF FACTS**

Mr. Ryan Adams, a resident of Titusville, Florida, is charged with receipt and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (a)(5)(B). (Doc. 1). The charges against Mr. Adams stem from his alleged activity on "Website A." (Exh. 1 at 16 ¶ 7). On September 25, 2015, FBI Agent N. Lynn Raymundo

applied for a search warrant to search the "Adams Media Storage Devices[1]" obtained on September 11, 2015, and September 12, 2015, from Mr. Adams. (Exh. 1 at 7-8 ¶¶ 2, 4). The warrant application specifically sought authorization to forensically examine the property obtained from Mr. Adams. (Exh. 1 at 8 ¶¶ 4-5). The search warrant and affidavit are attached as Exhibit 1 (herein after Adams Media Storage Devices Warrant). The affidavit in support of the search warrant provided that:

> [t]hrough an *investigative lead* sent to the FBI Brevard Resident Agency from FBI Headquarters, I know that Ryan Anthony A[dams], the user of an account resolving back to 847 Tennessee Street, Titusville, Florida 32796, has been linked to an online community of individuals who regularly send and receive child pornography via a website that operated on an anonymous online network. The website is described below and referred to herein as "Website A." (Exh. 1 at 16 ¶ 7).

The affidavit in support of the Adams Media Storage Devices Warrant primarily relied upon information derived from an investigation into a website referred to in the affidavit as "Website A." (Exh. 1 at 16 ¶ 7; 26-27 ¶¶ 26-31). The affiant described Website A as "a child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children . . . ." (Exh. 1 at 19 ¶ 12). Thereafter, relying on the information provided by Agent N. Lynn Raymundo, Magistrate Thomas B. Smith, of the Middle District of Florida, issued Search Warrant # 15-MJ-1531, to search the Adams Media Storage Devices. (Exh. 1, *Search and Seizure Warrant*, dated September 25, 2015, at 2-6).

---

[1] The Adams Media Storage Devices includes: a Hewlett Packard (HP) Laptop Computer, serial number 5CD2180NGG, three Compact Discs (CDs), USB external memory 1.8 Hard Drive, 10 Mega External Hard Drive, serial number W2AA405879, PNY 16 GB Black/Blue USB Drive, and Micro SD HC 4GB, Lexar SD Card 128MB. (Exh. 1 at 8 ¶ 4).

In this case, the Government obtained evidence of Mr. Adams' alleged criminal conduct through a multi-step process. (*See* Exh. 1-3). First, it seized control of Website A. (Exh. 1 at 19 ¶ 12). Next, it obtained a series of search warrants that allowed the Government to identify individual users who were accessing the content on Website A. (Exh. 1 at 19 ¶ 12; Exh. 2-3). One of these search warrants authorized the deployment of a NIT. (Exh. 1 at 25 ¶ 25; Exh. 3). Finally, the Government searched the computer of several individuals, including Mr. Adams. (*Id.*)

In February 2015, FBI agents seized control of the computer server hosting Website A in Lenoir, North Carolina and moved it to Newington, Virginia. (Exh. 1 at 19 ¶ 12; Exh. 3 at 28 ¶¶ 29-30). The investigation into Website A led the Government to procure an order pursuant to Title III from a district judge in the Eastern District of Virginia on February 20, 2015. (*See Application for an Order Authorizing Interception of Electronic Communications*, dated February 20, 2015, at ¶ 52) (herein after Title III Order) (Exh. 2). The Title III Warrant permitted the Government to intercept communications between Website A users. (Exh. 2 at 3-4 ¶ 3). Rather than shutting down the website, agents assumed administrative control over the website and continued to operate it from a Government facility in Virginia. (Exh. 1 at 19 ¶ 12; Exh. 3 at 27-28 ¶¶ 28-30). During a 12 day period, February 20, 2015 to March 4, 2015, agents allowed the continued distribution of child pornography to identify users of Website A. (*Id.*)

Through this investigation, agents discovered that users could only access Website A through "The Onion Router" or "TOR" network. (Exh. 3, *Affidavit in Support of Application For Search Warrant* at 16-17 ¶ 7). The TOR network is an open-source

3

tool that provides anonymity and privacy to those using the Internet. (*Id.*) The TOR software prevents someone who is observing the user from identifying which sites they are visiting and it prevents sites from identifying the use "by bouncing their communications around a distributed network of relay computers run by volunteers all around the world, thereby making the user's actual IP address." (Exh. 1 at 18 ¶ 10; Exh. 3 at 17 ¶ 8). "Because of the way Tor routes communications . . . traditional IP identification techniques [were] not viable" to agents investigating the users of Website A. (Exh. 3 at 17 ¶ 8). Consequently, also on February 20, 2015, the Government obtained a search warrant from a magistrate judge in the Eastern District of Virginia that allowed the deployment of a NIT (herein after NIT Warrant) (Exh. 3). The order permitted agents to covertly transmit a computer code to Website A users. (Exh. 3 at 30-31 ¶ 33-37). This computer code then generated a communication from those users' computers to the Government operated server revealing those users' IP addresses and other identifying information[2] of computers used to access Website A. (*Id.*).

---

[2] The Affidavit in Support of Application For Search Warrant states "the NIT will only reveal to the government the following items . . ."
   a. The 'activating' computer's actual IP address, and the date and time that the NIT determines what that IP address is;
   b. A unique identifier generated by the NIT (e.g., a series of numbers, letters, and/or special characters) to distinguish the data from that of other 'activating' computers. That unique identifier will be sent with and collected by the NIT;
   c. The type of operating system running on the computer, including type (e.g., Windows), version (e.g., Windows 7), and architecture (e.g., x 86);
   d. Information about whether the NIT has already been delivered to the 'activating' computer;
   e. The 'activating' computer's 'Host Name.' A Host Name is a name assigned to a device connected to a computer network that is used to identify the device in various forms of electronic communication, such as communications over the Internet;
   f. the 'activating computer's active operating system username; and
   g. The 'activating' computer's Media Access Control ('MAC') address. The equipment that connects a computer to a network is commonly referred to as a network adapter. Most network adapters have a MAC address assigned by the manufacture of the

Through the use of the NIT, agents determined that Website A user called "Gouki" had accessed a total of three images of child pornography, (on February 19, 2015, February 21, 2015, and March 4, 2015) and then traced the IP address of that user to Mr. Adams' home address in Titusville, Florida. (Exh. 1 at 26-27 ¶¶ 26-31). Thereafter, on September 11, 2015, FBI agents came to Mr. Adams' home. (Exh. 1 at 27 ¶ 32). During this confrontation, Mr. Adams allegedly made incriminating statements and turned over his personal computer and other media storage devices which allegedly contain child pornography. (Exh. 1 at 27-28 ¶¶ 32-34). Additionally, on September 12, 2015, Mr. Adams turned over additional media storage devices. (*Id.*). Thereafter, on September 25, 2015, law enforcement officials obtained the Adams Media Storage Devices Warrant from Magistrate Judge Thomas B. Smith in this District to forensically exam the devices obtained from Mr. Adams on September 11 and September 12, 2015. (Exh. 1 at 2-6). If convicted, Mr. Adams faces a five year mandatory minimum sentence and a twenty year maximum sentence on the receipt count. On the possession count, he faces a maximum penalty of twenty years in prison.

## ARGUMENT

The Government's search of Mr. Adams' computer through the use of a NIT was a violation of the jurisdictional requirement for searches under both Fed. R. Crim. P. 41(b) and 28 U.S.C. § 636(a). This requirement authorizes a magistrate judge to issue search warrants only for a location within the judicial district itself, with limited

---

adapter that is designed to be a unique identifying number. A unique MAC address allows for proper routing of communications on a network. Because the MAC address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter. (Exh. 3 at 31-32 ¶ 34).

exceptions not applicable to the present case. This restriction is not a ministerial technicality. *See United States v. Levin*, Case No. 15-cr-10271-WGY, 2016 WL 1589824 at *8 (D. Mass. May 5, 2016) (holding "because the violation [] involved 'substantial judicial authority' rather than simply 'procedures for obtaining and issuing warrants,' . . . the Court cannot conclude that it was merely ministerial . . ."). Rather, Rule 41 and 636(a) serve a critical line of protection against nationwide searches that occurred in this case. Suppression of the seized evidence is mandated because a search warrant that the magistrate judge was not permitted by rule and statute to issue is "no warrant at all," *United States v. Krueger*, 809 F.3d 1109, 1126 (10th Cir. 2015) (Gorsuch, J., concurring), and is "per se harmful," i.e., prejudicial, to the defendant. *See id*. at 1122.

### A. The Warrant is Not Authorized Under Rule 41

The forensic search of Adams' Media Storage Devices was the direct result of the illegal search of his computer and countless others—through the use of a NIT. The NIT Warrant issued by the magistrate judge in the Eastern District of Virginia violated the clearly established jurisdictional limits set forth in Fed. R. Crim. P. 41. It allowed agents to conduct a borderless dragnet search with no geographical limitation. Rule 41 simply does not permit a magistrate judge in Virginia to authorize the search of the Adams' computer in Florida.

Rule 41(b) provides a magistrate judge with authority to issue a warrant in five unambiguous circumstances:

> (b) Authority to Issue a Warrant. At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district-or if none is reasonably available, a judge of a state court of record in the district- has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

(3) a magistrate judge—in an investigation of domestic terrorism or international terrorism—with authority in any district in which activities related to the terrorism may have occurred has authority to issues a warrant for a person or property within or outside that district;

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both;

(5) a magistrate judge having authority in any district where activities related to the crime may have otherwise occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:

(A) a United States territory, possession, or commonwealth;

(B) the premises—no matter who owns them—of a United States diplomatic or consular mission in a foreign state, including any appurtenant building, part of a building, or land used for the mission's purposes; or

(C) a residence any appurtenant land owned or leased by the United States and used by the United States personnel assigned to a United States diplomatic consular mission in a foreign state.

The warrant in this case is not authorized under any of the five subsections and is therefore plainly unlawful. Since this case does not involve terrorism under subsection (b)(3) or any of the territorial jurisdiction discussed under subsection (b)(5), only subsections (b)(1), (b)(2), and (b)(3) will be addressed.

Rule 41(b)(1) allows a magistrate judge to issue a warrant for people or property located within that judge's district. Yet, Mr. Adams' computer was never located in or seized in the Eastern District of Virginia. Rather, the NIT Warrant erroneously states that the evidence sought is "located in the Eastern District of Virginia." (Exh. 3, *Search and Seizure Warrant* at 4-6). Attachment A to the NIT Warrant indicates the computer server, located in Virginia, is the place to be searched. (Exh. 3, *Attachment A* at 5). However, the server for Website A or the "Target Website" was already under the FBI control in the district. Instead, the actual place to be searched was the countless "activating computers—wherever located" that would unknowingly download the NIT, thereby forcing the transmission of their internal data back to the FBI in Virginia. (Exh. 3 at 35 ¶ 46). The NIT Warrant authorized these searches even though there was no basis to conclude that these computers were located within the Eastern District of Virginia. Therefore, Rule 41(b)(1) cannot be the basis for the search of Mr. Adam's computer in Florida.

Rule 41(b)(2) allows an extraterritorial search or seizure of movable property *if it is located within the district when the warrant is issued* but "might move or be moved outside the district *before* the warrant is executed." Again, this subsection fails to provide authorization because Mr. Adams' computer was not ever physically located within the Eastern District of Virginia. The property seized in this case was Mr. Adams' computer, which at all times has remained in Florida. The NIT Warrant allowed the Government to send a computer code or malware to extract data from Adams' computer, "wherever located." (*Id.*). Through that malware, the Government essentially "entered [Mr. Adam's]

home, took control of his computer and 'searched' it for private information he had endeavored to keep confidential." *United States v. Arterbury*, Case No. 15-CR-182-JHP, 2016 U.S. Dist. LEXIS 67091, at *18 (N.D. Okla., Apr. 25, 2016)(Oklahoma case involving the same NIT Warrant issued by the same magistrate judge in the Eastern District of Virginia, finding a violation for Rule 41(b))[3]. Therefore, the property seized was not located in the Eastern District of Virginia at the time the warrant was signed. Instead, the affidavit in support of the NIT Warrant makes it clear that the Government could not obtain Mr. Adams' IP address and other identifying information until the malware made its way to Mr. Adams' computer in Florida and "cause[d] the user's computer to send" information to the Government, including the IP address. (Exh. 3 at 17¶ 8; 29-32 ¶¶ 31-36 ). Consequently, subsection (b)(2) is also inapplicable.

Likewise, the NIT Warrant under Rule 41(b)(4) is invalid. Rule 41(b)(4) allows for tracking devices to be installed within the issuing district on an object that may travel outside the district. In this case, the NIT Warrant is not analogous to a tracking warrant. In fact, other district courts analyzing the same facts and circumstances surrounding the NIT Warrant have rejected the applicability of subsection (b)(4) as the basis for the magistrate's authority. *See United States v. Michaud*, 2016 WL 337263 at *6 (W.D. Wash., Jan 28, 2016); *United States v. Levin*, Case No. 15-cr-10271-WGY, 2016 WL 1589824 at *6 (D. Mass., May 5, 2016); *United States v. Arterbury*, Case No. 15-CR-182-JHP, 2016 U.S. Dist. LEXIS 67091 at *21 (N.D. Okla., Apr 25, 2016).

---

[3] *United States v. Arterbury*, Case No. 15-CR-182-JHP, 2016 U.S. Dist. LEXIS 67092 (N.D. Okla., May 17, 2016) Order affirming and adopting the Report and Recommendation of the United States Magistrate Judge.

In *Michaud* and *Arterbury*, the courts rejected the Government's argument that the NIT Warrant is valid as a tracking warrant, reasoning that "if the installation occurred on the government-controlled computer located in the Eastern District of Virginia, applying the tracking device exception breaks down, because [the defendant] never controlled the government-controlled computer, unlike a car with a tracking device leaving a particular district," and "if the installation occurred on [the defendant's] computer, applying the tracking device exception again fails, because [the defendant's] computer was never physically located within the Eastern District of Virginia." *Arterbury* at *21 (citing *Michaud*, 2016 WL 337263 at 6 (W.D. Wash., Jan 28, 2016)). Consequently, subsection (b)(4) is not applicable and the Court must conclude that the NIT Warrant violated Rule 41(b).

## B. The Warrant Violated 28 U.S.C. § 636(a)

The NIT Warrant issued by the magistrate judge in the Eastern District of Virginia also was in violation of the Federal Magistrate Act. *United States v. Krueger*, 809 F.3d 1109, 1118-1122 (10th Cir. 2015) (Gorsuch, J., concurring)(emphasizing that a violation of Rule 41(b)'s territorial limitations also implicate a statutory limitation). Section 636(a) of the Federal Magistrate Act provides:

> (a) Each United States magistrate judge serving under this chapter shall have within *the district in which sessions are held by the court that appointed the magistrate judge*, at other places where the court my function, and elsewhere as authorized by law
>
> > (1) all powers and duties conferred or imposed . . . by law or by the Rules of Criminal Procedure [.]

10

Essentially, Section 636(a) provides three geographic areas in which a magistrate judge's powers are effective. First, "within the district in which sessions are held by the court that appointed the magistrate judge." Second, "at other places where that [District] court may function." Third, "elsewhere as authorized by law . . . ."

Here, the NIT Warrant approved a search of property outside the Eastern District of Virginia. Consequently, the magistrate judge's issuance of the NIT Warrant— to search property outside of her judicial district—violated the territorial restriction provided in the first paragraph of Section 636(a). Neither the second or third geographic areas are applicable to the case at hand—as Rule 41(b) did not confer on the magistrate judge authority to issue the NIT Warrant. Thus, there are no other "law or . . . Rules of Criminal Procedure" on which the magistrate judge could have based its jurisdiction pursuant to Section 636(a)(1). In other words, in order for the magistrate judge to have had jurisdiction to issue the NIT Warrant under Section 636(a), she must have had authority to do so under Rule 41(b), another statutory authority, or a federal rule that could serve as the basis for such jurisdiction. However, as the magistrate "purported to exercise power in none of these places," the NIT Warrant is "no warrant at all when looking to the statutes of the United States." *Krueger*, 809 F.3d at 1118.

### C.  Suppression is Warranted

Rule 41 and 28 U.S.C. 636(a) were clearly violated, and the search of Mr. Adams' computer in Florida would not have occurred had Rule 41(b) been followed. The magistrate judge was never authorized to issue the NIT Warrant. This flagrant violation of the Fourth Amendment amounts to "no warrant at all." *See Krueger*, 809 F.3d at 1126

(Gorsuch, J., concurring) (holding "a warrant issued in defiance of positive law's jurisdictional limitation on a magistrate judge's power . . . for Fourth Amendment purposes . . . is no warrant at all.").

The Eleventh Circuit has stated that when analyzing alleged violations of Rule 41, suppression of evidence is required "only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of an intentional and deliberate disregard of a provision in the Rule." *United States v. Gerber*, 994 F.2d 1556, 1560 (11th Cir. 1993).

Here, Mr. Adams was prejudiced because the search authorized by the Adams Media Storage Devices Warrant would have never occurred but for the information derived from the improperly issued NIT Warrant. Agent Raymundo's affidavit clearly shows there was no independent investigation apart from the investigation into Website A that led the FBI Agents to Mr. Adams' house on September 11, 2015. (Exh. 1 at 16 ¶ 7).

There is no doubt the searches of Mr. Adams' computer would not have occurred had Rule 41(b) been followed. The affidavit in support of the NIT Warrant makes it clear that absent the deployment of the NIT, it would have been impossible to secure the IP addresses of Website A users. (Exh. 3 at 29 ¶ 31). Likewise, the affidavit in support of the Adams Media Storage Devices Warrant by Agent Raymundo, reiterates that "[b]ecause of the way the [TOR] Network routes communication through other computers, traditional IP identification techniques are not viable." (Exh. 1 at 17 ¶ 8). Without the deployment of the NIT, Mr. Adams' physical location and IP address was

not discoverable. (See Exh. 3 at 29 ¶31). Therefore, under the Eleventh Circuit framework, the evidence here must be suppressed.

Furthermore, the "good-faith" exception does not apply. The NIT Warrant in this case was not a "technical violation" of Rule 41(b). While courts have found suppression is not warranted in some cases of a Rule 41 violation, they have all involved violations of procedural requirements under Rule 41(a), (c), (d), or (e). *See Krueger*, 809 F.3d at 1115, n.7 (collecting cases). In contrast, this case involves a violation of Rule 41 that pertains to the fundamental jurisdiction and "substantive judicial authority" of the magistrate judge to issue the NIT Warrant. *Krueger*, 809 F.3d at 1115, n.7 (citing *United States v. Berkos*, 543 F.3d 392, 397 (7th Cir. 2008)).

The *Levin* case is particularly instructive on this point. The court in *Levin* found that the Supreme Court's decision in *Leon* did not contain "the slightest suggestion" that the good faith rule should extend to a warrant that was essentially void *ab initio* because of the issuing court's lack of jurisdiction to authorize the search in the first instance. *Levin*, 2016 WL 1589824 at *10. Rather, after analyzing the Supreme Court's post-*Leon* good-faith cases and the Sixth Circuit's decision in *Scott*[4] the Levin court concluded the good-faith exception did not apply at all. *Id.* at 12.

However, even if the good-faith exception applied here, the circumstances involving the NIT Warrant and the issuing magistrate who lacked the authority to do so, weigh in favor of suppression. First, the NIT Warrant recklessly described the search would take

---

[4] *United States v. Scott*, 260 F.3d 512, 513-515 (6th Cir. 2001) involved a search warrant issued by a retired judge who lacked authority to do so. The Sixth Circuit held the warrant was void *ab initio* stating "we are confident that Leon did not contemplate a situation where a warrant is issued by a person lacking the requisite legal authority." *Id.* at 515.

place in the Eastern District of Virginia. Next, it is not objectively reasonable for an FBI agent with 19 years of federal law enforcement experience, who has "participated in the execution of numerous warrants involving the search and seizures of computers, computer equipment, software, and electronically stored information" and who has "communication with forensic professionals assisting with the design and implementation of the NIT" to believe the NIT Warrant was properly issued considering the plain requirements of Rule 41(b). (Exh. 3 at 7-8 ¶¶ 1, 3).

## CONCLUSION

Wherefore, Mr. Adams respectfully requests this Honorable Court to grant his motion to suppress the evidence as outlined above, as it was obtained in direct violation of Mr. Adams' rights under the Fourth Amendment. Mr. Adams requests an evidentiary hearing on the merits of this pleading.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*s/Nicole Mouakar*
Nicole Mouakar
Assistant Federal Defender
Florida Bar No.0074389
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6765
E-Mail: nicole_mouakar@fd.org
Attorney for Ryan A. Adams

## CERTIFICATE OF SERVICE

I Hereby Certify that undersigned electronically filed the foregoing *Defendant's Motion to Suppress* with the Clerk of Court (CM/ECF) by using the CM/ECF system which will send a notice of electronic filing to the following: Karen L. Gable, Assistant United States Attorneys, this the 1st day of June, 2016.

<u>*s/Nicole Mouakar*_____</u>
Attorney for Defendant