```
                      UNITED STATES DISTRICT COURT

                       MIDDLE DISTRICT OF FLORIDA

                           ORLANDO DIVISION


UNITED STATES OF AMERICA,    )
                             )
           Plaintiff,        )
                             )
vs.                          )
                             )    CASE NO. 6:16-CR-11
                             )
RYAN ANTHONY ADAMS,          )
                             )
           Defendant.        )
                             )
_____)


              MONDAY, JUNE 20, 2016; 4:36 P.M.
                     STATUS CONFERENCE
              BEFORE THE HONORABLE PAUL G. BYRON
                  UNITED STATES DISTRICT JUDGE


GOVERNMENT COUNSEL:
 Karen Gable

DEFENSE COUNSEL:
 James Skuthan
```

*Proceedings recorded by mechanical stenography
 Transcript produced by computer-aided transcription*

```
 1                    P R O C E E D I N G S
 2            THE DEPUTY CLERK:  This is United States of
 3   America versus Ryan Anthony Adams, case number
 4   6:16-CR-11-Orlando-40GJK.  For the government.
 5            MS. GABLE:  Karen Gable on behalf of the
 6   United States.
 7            THE DEPUTY CLERK:  And defense.
 8            MR. SKUTHAN:  James Skuthan on behalf of
 9   Nicole Mouakar.
10            THE COURT:  All right.
11            We were talking about the motion to continue
12   -- the unopposed motion to continue the suppression
13   hearing, which I had set for the 24th of this month.
14            And I was mentioning that I had set that by
15   tracking the number of days for a response and then
16   setting a hearing at the next available date, which was
17   in error on my part since the attorney for the
18   government assigned to the case is on military leave
19   during that time, so we will be changing that date to a
20   later time frame.
21            Do either of you happen to know when counsel
22   for the government will be back from the military?
23            MR. SKUTHAN:  Well, actually, it's counsel for
24   the defense --
25            THE COURT:  Oh, counsel for the defense.
```

```
 1   I'm sorry, you're right.
 2              MR. SKUTHAN:  -- but since she's a federal
 3   defender I guess she's also defendant's counsel, but her
 4   first day back will be July 5th.  But the government's
 5   response is due July 1st, we would want at least time to
 6   review the government's response.
 7              THE COURT:  Well, right now July 11th has
 8   opened back up.
 9              MR. SKUTHAN:  That would be perfect.
10              THE COURT:  Is that good for you, Ms. Gable?
11              MS. GABLE:  Yes, that's fine, Your Honor,
12   thank you.
13              THE COURT:  Let's set it for July 11th, since
14   we have the case -- now, let me -- I hate to do this,
15   but one concern I have is there is the trial,
16   Mr. Henderson's trial, the Jackson case, is set for the
17   11th, but reading some tea leaves it seems like that
18   date might be hard to hit.  So we can set it for the
19   11th, but that may be subject to change depending on
20   whether that trial starts.  And if it does, then we'll
21   come back around and figure it out.  The case is on --
22   do either of you happen to know what trial term that one
23   is currently set for?
24              MS. GABLE:  August.
25              THE COURT:  Okay, that's good.
```

```
 1   That's convenient.  So, we will get to the motion
 2   sometime in July, but let's tentatively set it for the
 3   11th, since I suspect that date may become available.
 4            Going back to the earlier point --
 5            THE DEPUTY CLERK:  Did you want a time?
 6            THE COURT:  Oh, yes, I'm sorry.
 7            Go right ahead.
 8            THE DEPUTY CLERK:  Did you want a 2:00 time?
 9            THE COURT:  No, it's a suppression hearing.
10   Let's start it at 10:00, since we have no idea how long
11   this will take.  Ten o'clock on the 11th subject to
12   availability.
13            In reading the motion to suppress and in doing
14   some of my own independent research, I started to
15   question in my own mind the issue of expectation of
16   privacy in an IP address, which was not briefed
17   initially by the defense.  If you wish to submit
18   supplemental briefing on that, feel free to do so.
19            Since we have a little bit of time, if you
20   want to brief that issue, Mr. Skuthan, or one of your
21   colleagues brief it, then -- today is the 20th -- let's
22   have your supplemental brief by the 24th, and then we'll
23   move back the government's response in an equal amount
24   of time.  So whatever your response was, Ms. Gable,
25   we'll go the additional four days added to that, four
```

```
 1   work days added to that.
 2              MR. SKUTHAN:  So if --
 3              THE COURT:  The government response is due
 4   when right now?
 5              MR. SKUTHAN:  The 1st.
 6              THE COURT:  The 1st.  So it would be due on
 7   the 5th --
 8              MR. SKUTHAN:  Thank you.
 9              THE COURT:  -- which is a Tuesday.
10         Would that give you enough time if you
11   received it or if your colleagues received it on the
12   5th, the response, to have -- that would essentially
13   give you five days to review it before the start of the
14   hearing.  So, my issue was concern about -- and
15   Mr. Skuthan was nodding in agreement, for the record.
16              MR. SKUTHAN:  Yes, Your Honor.
17              THE COURT:  The issue I was concerned about
18   was an expectation of privacy in an IP address in the
19   context of the Tor system, which I understand to involve
20   the movement of the query by the home server, so to
21   speak, the defendant's server.
22         The defendant's computer puts out a query.
23   As I understand, it goes from your computer to the
24   Internet service provider or your ISP.  It goes from
25   there to the first server, and then it gets moved around
```

```
 1   and around until it gets to the place that the
 2   information is being collected, and then it goes back.
 3           So, there's two concerns I have that didn't
 4   appear in the briefing so far.  One was the expectation
 5   of privacy in the IP address, which goes out to an ISP.
 6           And then, this one may be a bit esoteric and
 7   may be completely off point, but whether or not
 8   government activity, which is necessary for a Fourth
 9   Amendment violation, is effected by the way Tor
10   operates, and let me be a little clear about that.
11   And this may be distinction without a difference, so
12   bear that in mind.  I'm just thinking out loud here.
13           As I understand, the last Tor server -- let's
14   assume hypothetically there are five servers that go
15   from the time you hit your send key till the time it
16   gets to the FBI computer, the computer that was seized
17   by the FBI as part of the undercover operation.
18           If the input from the ISP that goes from your
19   home to the ISP to Tor number 1, Tor 2, 3, 4, 5, five
20   queries, the FBI, that has this code embedded in it, the
21   governmental surveillance technique.  There's an acronym
22   used in the motion.  I can't recall it.  But it then
23   travels back -- the query travels back to the home
24   computer the same way or some similar path through the
25   Tor network.
```

```
 1              The warrant in the Eastern District is to
 2    embed the code into the server that's communicating with
 3    the FBI server.  That server then hands off to Tor 4,
 4    Tor 3, Tor 2, Tor 1.  Is that governmental activity or
 5    is that non-governmental activity, because it's being
 6    handed off through a number of servers the government
 7    doesn't control nor can it control because they're
 8    anonymous?  I don't know.  I'm not an I.T. person.
 9              It's just as I was reading through the way the
10    affidavit was read and the motion focuses, quite
11    correctly, upon the information contained in the
12    affidavit, it caused me to wonder -- see if there is an
13    impact in terms of governmental activity when you have
14    this number of servers in the Tor system.
15              It may be a distinction with no difference.
16    It may be like a cell tower with a cell phone call at
17    one point or another and it makes no difference, but I'd
18    like to know if this is a hearing that's going to
19    require some sort of technical testimony, because maybe
20    none of the lawyers in the room, including me, are
21    competent to address some of these issues, I don't know.
22    I'm just throwing it out there, because it's better to
23    discuss it now rather than later.  And since we're here
24    and I've just been reading it again, it's on my mind.
25    All right?
```

```
 1            MR. SKUTHAN:  We'll take that into
 2   consideration.
 3            THE COURT:  Yeah, for what it's worth.
 4            MR. SKUTHAN:  Thank you.
 5            MS. GABLE:  Thank you, Your Honor.
 6            THE COURT:  Thank you.
 7            All right.  We're in recess.
 8       (Adjourned at 4:42 p.m.)
 9                  - - - - - - - - - -
10            Certificate of Official Reporter
11   I certify that the foregoing is a correct transcript of
12   the proceedings held in the above-entitled matter.
13   s/Koretta Stanford
     _____
14   Official Court Reporter
     United States District Court
15   Middle District of Florida
16   Date:  June 21, 2016
17
18
19
20
21
22
23
24
25
```